1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,           No.  2:13-cr-00310 JAM-1

12              Plaintiff,

13        v.                             **ORDER DENYING DEFENDANT'S MOTION
                                         TO SUPPRESS EVIDENCE**
14   FRANCISCO DIAZ-PEREZ,

15              Defendant.

16

17        This matter is before the Court on Defendant Francisco Diaz-

18   Perez' ("Defendant's") Motion to Suppress Evidence (Doc. #18).

19   The United States (the "Government") opposes Defendant's Motion

20   (Doc. #21) and Defendant replied (Doc. #23).  On July 1, 2014,

21   the Court held a hearing regarding Defendant's Motion to Suppress

22   Evidence (Doc. #24).  For the reasons set forth below,

23   Defendant's motion is denied.

24

25        I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

26        This case arises out of police surveillance of Edward

27   Soellner's residence and two executed search warrants: (1) a

28   warrant to search Edward Soellner's residence on Walnut Avenue in

                                    1

1  Orangevale, California; and (2) a warrant to search Defendant's

2  residence on Verner Avenue in Sacramento, California.

3      On August 1, 2013, Folsom Police Officers were surveilling

4  Edward Soellner's residence on Walnut Avenue and observed someone

5  arriving at the house, but was sent away by Soellner.  Narrative,

6  Def.'s Ex. A, Doc. #18-1, at 1.  Soon after, a light blue Nissan

7  arrived at the house and the driver was identified as Defendant

8  by police observation, his vehicle registration, and DMV photo.

9  Id.  Defendant was described as a Hispanic male in his early- to

10 mid-twenties, approximately 5'7" to 5'10" tall with medium length

11 hair and weighed approximately 120 to 150 pounds.  Search Warrant

12 and Affidavit, Def.'s Ex. D, Doc. #18-5, at 13.  Defendant

13 removed an unknown object from the car and carried it into the

14 residence.  Narrative, Def.'s Ex. A, Doc. #18-1, at 1.

15 Approximately 6 minutes later, Defendant was seen leaving the

16 residence without the object.  Id.  After Defendant left, the

17 same individual who was sent away earlier returned to the house

18 and went inside.  Id.

19     Based on the officer's training and experience, he believed

20 that Defendant was supplying drugs to Soellner.  Id.

21     On August 13, 2013, a Sacramento Superior Court Judge signed

22 a warrant to search Soellner's house, the occupants, and their

23 vehicles.  Id.  The following day, officers arrived at the house

24 to execute the warrant.  Id.  They were conducting surveillance

25 when Defendant's light blue Nissan made a U-turn and parked in

26 front of the house.  Id. at 1-2.

27     An officer made contact with Defendant, who was sitting in

28 the driver's seat of the vehicle with the vehicle running.  The

2

1   officer identified himself and detained Defendant outside the

2   vehicle by placing him in double locked handcuffs and advising

3   Defendant that he was being detained.  After asking Defendant if

4   he had any weapons on his persons and Defendant informing him

5   that he did not, the officer noticed a bulge in Defendant's left

6   cargo pocket.  The officer advised Defendant that he was going to

7   conduct a pat search of his person for weapons.  He felt the

8   bulge of Defendant's pocket and touched what felt like a plastic

9   bag containing a crumbling hard substance.  The bag was pushing

10   the pocket's cover out, allowing the officer to see into the

11   pocket.  He observed a clear plastic bag containing what the

12   officer recognized to be methamphetamine.  The officer reached

13   into the pocket, removed the bag, and placed Defendant under

14   arrest.  Id. at 2.  Upon analysis, the bag was found to contain

15   116.1 grams of methamphetamine.  Id.  Later that day, an officer

16   applied for a warrant to search Defendant's residence on Verner

17   Avenue.  Supplemental Narrative, Def.'s Ex. B, Doc. #18-3, at 2.

18     Defendant contends that five officers with their guns raised

19   surrounded his vehicle when he arrived at the house and he

20   believed he was being kidnapped.  Def.'s Statement, Def.'s Ex. C,

21   Doc. #18-4, at 1.  During the July 1 hearing, the Government

22   noted that only one officer was used to detain Defendant, but

23   also mentioned that the detention would be valid even if the

24   Court were to accept Defendant's allegations.

25     Additionally, Defendant's booking photo and arrest report

26   describe Defendant at the time as 5' tall, weighing 115 pounds,

27   and having close-cropped hair.  Ex. E-F, Doc. ##18-6, 18-7.

28

1            II.   OPINION

2     A.   <u>Legal Standard</u>

3         Evidence obtained in violation of the Fourth Amendment must

4    be excluded from a federal criminal prosecution.   <u>Weeks v.</u>

5    <u>United States</u>, 232 U.S. 383, 398 (1914).

6         The burden is on the United States to justify the

7    warrantless arrest and search of the Defendant.   <u>United States</u>

8    <u>v. Carbajal</u>, 956 F.2d 924, 930 (9th Cir. 1992), citing <u>Katz v.</u>

9    <u>United States</u>, 389 U.S. 347 (1967).   In addition, for a search

10   warrant to be valid, it "must be supported by an affidavit

11   establishing probable cause."   <u>United States v. Stanert</u>, 762

12   F.2d 775, 778 <u>amended</u>, 769 F.2d 1410 (9th Cir. 1985).

13    B.   <u>Discussion</u>

14        Defendant moves to suppress (1) a bag of methamphetamine

15   found in his pocket, and (2) 3.6 pounds of heroin, 5.3 pound of

16   methamphetamine, and $13,000 in cash police found in his

17   apartment.   <u>See</u> Opp. at 1.

18        1.   <u>Bag of Methamphetamine Found in Defendant's</u>
19             <u>Pocket</u>

20        Defendant argues that the evidence seized from his pocket

21   should be suppressed because his arrest was unlawful under the

22   Fourth Amendment in that the officers had no arrest warrant and

23   no probable cause or exigent circumstances existed.   The

24   Government argues that Defendant was not arrested, but was

25   detained and the bag of methamphetamine was in plain view/plain

26   touch.   The Government also briefly argues that the search was

27   justified under exigent circumstances. Opp. at 1 n.1.

28
                                  4

1              a.    Detention Versus Arrest

2         Preliminarily, the Court must determine whether Defendant

3    was detained or arrested.  Defendant argues that he was arrested

4    when the officer opened his door, ordered him out of the car at

5    gunpoint, and handcuffed him.  Contrastingly, the Government

6    argues that the seizure was a justified Terry stop.

7         In determining whether a detention has ripened into an

8    arrest, the court must consider the "totality of the

9    circumstances."  Washington v. Lambert, 98 F.3d 1181, 1185 (9th

10   Cir. 1996) (citation omitted).  In examining the totality of the

11   circumstances, courts must "consider both the intrusiveness of

12   the stop, i.e., the aggressiveness of the police methods and how

13   much the plaintiff's liberty was restricted . . . and the

14   justification for the use of such tactics, i.e., whether the

15   officer has sufficient basis to fear for his safety to warrant

16   the intrusiveness of the action taken."  Id. (internal citations

17   omitted).  Courts must therefore "decide whether the police

18   action constitutes a Terry stop or an arrest by evaluating not

19   only how intrusive the stop was, but also whether the methods

20   used were reasonable given the specific circumstances."  Id.

21   (emphasis in original).

22        Defendant relies on Delgadillo-Velasquez, 856 F.2d 1292,

23   1295 (9th Cir. 1988) and United States v. Robertson, 833 F.2d

24   777 (9th Cir. 1987) to argue that an arrest occurred.  In

25   Delgadillo-Velasquez, the Ninth Circuit held that the officers'

26   show of force and detention techniques were indistinguishable

27   from police conduct in an arrest because "[t]he agents

28   approached with weapons drawn, cried halt, and required the

5

1  three men to lie face down in the street while they were

2  handcuffed.  The agents told the men that they were under arrest

3  and then read them the Miranda rights."  856 F.2d at 1295.

4  Therefore, the Ninth Circuit held that the defendant in

5  Delgadillo-Velasquez was under arrest.  Id. at 1295-96.  In

6  United States v. Robertson, the Ninth Circuit held that the

7  detention of a woman found on the premises of a house containing

8  a meth lab was an arrest that required probable cause when they

9  detained her at gunpoint.  833 F.2d at 781.  The court in

10  Robertson noted that nothing in the record suggested that the

11  display of force was necessary to ensure her compliance and

12  there was no indication she was armed.  Id.

13      The Government relies on United States v. Davis, 530 F.3d

14  1069, 1080 (9th Cir. 2008), in which the Ninth Circuit broadly

15  held that officers' authority to detain persons in proximity of

16  a search extended to a suspect who pulled up in a car while

17  officers were executing a search warrant.  In Davis, the police

18  executed a search warrant of a residence, where the residents

19  were suspected of growing marijuana.  Id.  While the officers

20  were searching the residence, the suspect drove onto the

21  property, voluntarily exited his vehicle, and was questioned by

22  officers.  The seizure was considered a Terry stop because

23  "[f]or Fourth Amendment purposes[,] . . . a warrant to search

24  for contraband founded on probable cause implicitly carries with

25  it the limited authority to detain the occupants of the premises

26  while a proper search is conducted."  Id. (citing Michigan v.

27  Summers, 452 U.S. 692, 705 (1981)).  The Ninth Circuit also held

28  that "[a]n officer's authority to detain incident to a search is

6

1  categorical; it does not depend on the 'quantum of proof

2  justifying detention or the extent of the intrusion to be

3  imposed by the seizure." Id. (citations omitted).

4      The facts in this case are distinguishable from those in

5  Delgadillo-Velasquez and Robertson.  Unlike in Delgadillo, the

6  officers in the present case were executing a warrant when

7  Defendant arrived at the premises.  Therefore, the officers'

8  authority to detain incident to a search was categorical under

9  Davis.  Unlike the suspect in Robertson, Defendant had

10  previously been observed at the location of the search, he was

11  suspected of drug trafficking, and the officers had reason to

12  believe that he was armed.  See Davis, 530 F.3d at 1082-83

13  (holding "[b]ecause officers reasonably suspected that [the

14  defendant] was involved in narcotics activity, it was also

15  reasonable for them to suspect that he might be armed").

16  Therefore, in this case, the officers were fully justified in

17  effecting the stop as they did with guns drawn and placing

18  Defendant in handcuffs.  See United States v. Guzman-Padilla,

19  573 F.3d 865, 884 (9th Cir. 2009) (intrusive means are

20  permissible without converting a stop into an arrest if the

21  police conduct "is a reasonable response to legitimate safety

22  concerns on the part of the investigating officers") (internal

23  quotation marks and citation omitted).

24              b.   Pat Down of Pocket

25      Defendant argues the pat down was unjustified because there

26  were no facts to lead the officers to believe Defendant was

27  armed and dangerous.

28      An officer may frisk a person only "where he has reason to

believe that he is dealing with an armed and dangerous

individual." Terry, 392 U.S. at 27; Reply at 9.  As mentioned

above, the officers had reason to believe that Defendant was

armed.  See Davis, 530 F.3d at 1082-83 (holding "[b]ecause

officers reasonably suspected that [the defendant] was involved

in narcotics activity, it was also reasonable for them to

suspect that he might be armed").  Defendant contends that Davis

is distinguishable because the defendant in Davis admitted his

involvement in the marijuana operation before he was frisked.

Reply at 10.  Although, at the time, Defendant in this case did

not admit to being involved, the officers had legitimate,

reasonable suspicion based on their experience that he was re-

supplying the drug dealer in the house with drugs and was

therefore involved in narcotics activity.  Defendant also argues

that the frisk occurred in a public place to which he was not

connected.  However, Defendant did have a connection to this

location because they had seen his car previously at that house.

Therefore, the officers permissibly frisked him for weapons.

     Defendant further argues that the pat down was unlawful

because it was not limited in scope, citing Sibron v. New York,

392 U.S. 40, 65 (1968); Reply at 9-10.  Although, as Defendant

argues, "Terry does not allow 'any search whatever for anything

but weapons,' if, during the course of a lawful pat down, an

officer feels an item he recognizes as contraband or evidence,

the officer may seize the item."  Davis, 530 F.3d 1069, 1083

(quoting Ybarra v. Illinois, 444 U.S. 85, 93-94 (1979)).  In

Sibron, the officer, "with no attempt at an initial limited

exploration for arms," "thrust his hand into Sibron's pocket and

took from him envelopes of heroin." 392 U.S. at 65. This evidence was suppressed, for "[t]he search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception–the protection of the officer by disarming a potentially dangerous man." Id.

Unlike the officer in Sibron, the officer in the present case did not thrust his hand into Defendant's pocket before patting him down. He patted Defendant down and felt a bulge. By touching the pocket, the officer determined that the crumbling hard substance in a plastic bag was contraband. See United States v. Rafus, 425 F. App'x 547, 549 (9th Cir. 2011) ("An officer conducting a lawful pat down may seize from the defendant an item that the officer immediately recognizes from touch to be contraband").

Because the Terry stop and pat down were lawful, the Court denies Defendant's motion to suppress the evidence found in Defendant's pocket.

2.   Evidence Discovered Through Execution of Search Warrant

Defendant also argues that the evidence seized from his apartment must be suppressed because (1) the search warrant was obtained by exploiting an unlawful arrest and (2) the supporting affidavit omitted a discrepancy in Defendant's description. In the reply, Defendant argues that the omission was material based on United States v. Hernandez, 135 Fed. App'x. 97 (9th Cir. 2005).

First, because the prior search was not unlawful for the reasons mentioned above, the officers did not obtain the search

1    warrant by exploiting an unlawful arrest.

2          Second, to challenge a facially valid search warrant, the

3    defendant must first make a "substantial preliminary showing"

4    that the affidavit contained an actual omission, and that the

5    omission was intentional or reckless.  United States v. Chesher,

6    678 F.2d 1353, 1360 (9th Cir. 1982).  Then it must be shown the

7    omission was material to the finding of probable cause, that is,

8    its addition would "leave the affidavit with insufficient content

9    to establish probable cause."  Franks v. Delaware, 438 U.S. 154,

10   155 (1978).

11         In Hernandez,

12         the detective (1) incorrectly reported the rental
           agent's description of the renter of the Dodge
13         Caravan; (2) equated the description of the renter
           with Hernandez' description in a false and misleading
14         manner; (3) overstated the strength of Officer
           Honomichl's identification of Hernandez; and (4) gave
15         the false impression that Officer Honomichl positively
           identified Hernandez within "moments" of the incident.
16

17   135 F. App'x 97, 98-99 (9th Cir. 2005).  Further, the detective

18   omitted the following facts:

19         (1) the owner of the rental car agency could not make a
           positive identification of Hernandez after seeing his
20         picture in a photo lineup; (2) the rental agent failed
           to identify Hernandez even after he was specifically
21         selected by the detective for identification;
           (3) Hernandez was stopped by police for a traffic
22         violation in Tempe 12 minutes prior to the time of the
           rental of the Dodge Caravan in Mesa; (4) neither Mr.
23         nor Mrs. Michael Leal could make a positive
           identification of Hernandez; (5) Hernandez had multiple
24         contacts with police in December, 2002, and during
           these contacts Hernandez was always cooperative with
25         them; and (6) the police conducted surveillance of his
           residence, and Hernandez was never seen in or near a
26         Dodge Caravan.

27   Id.  Therefore, "because the misstatements and omissions are

28   such," the Ninth Circuit was "compelled to conclude that the

1   affidavit was prepared with a reckless disregard for the truth."

2   Id. at 99.

3        In the present case, the discrepancy in Defendant's

4   description is based on an initial observation of Defendant from

5   a distance and not because the officer observed a different

6   suspect, as Defendant suggested during the hearing.   Detective

7   Kehm made a physical description of Defendant when he arrived at

8   the scene in his light blue Nissan on August 1, 2013.   Once

9   Detective Kehm saw Defendant's DMV photo, he confirmed it was the

10  same driver he described earlier.

11       The Government does not dispute that Detective Kehm

12  described Defendant's height and weight differently than

13  Defendant's actual height and weight.   However, there is no

14  evidence that the omission was intentional or reckless.

15  Moreover, unlike Hernandez, the omission in this case was neither

16  material nor egregious.   In Hernandez, there were numerous

17  omissions and mistakes.   In this case, as the Government argues,

18  the affidavit included significant, reliable information:

19  Detective Kehm saw the same car (the light blue Nissan with

20  license plate number 4PIF377, which he identified in the previous

21  affidavit) pull up to the Walnut House.   Detective Kehm ran the

22  plate and found that the car was registered to "Francisco Diaz."

23  Officers observed Defendant drive to the Verner Avenue address

24  and enter the residence without knocking.   After the Terry stop

25  discussed above, Detective Kehm found 116.1 grams of

26  methamphetamine in Defendant's pocket.   Finally, Defendant

27  admitted, after being Mirandized, he knew he was delivering

28  methamphetamine to other persons in exchange for money.   Opp. at

9-10 (citing Def. Exh. D at 8-15.)  The only omission was the discrepancy in Defendant's description.  Therefore, compared to all the evidence presented in the affidavit, the omission is not a material fact.

Accordingly, Defendant's motion to suppress the evidence found at his apartment is denied.

### III.  ORDER

For the reasons set forth above, the Court DENIES Defendant's Motion to Suppress Evidence in its entirety.

IT IS SO ORDERED.

Dated: July 24, 2014

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

12